# EXHIBIT E

FCBLTAFA

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   NATASHA TAFT,

 4                  Plaintiff,

 5           v.                              15 CV 5321 (PAE)

 6   AGRICULTURAL BANK OF CHINA
     LIMITED,
 7
                    Defendant.
 8
     ------------------------------x
 9                                           New York, N.Y.
                                             December 11, 2015
10                                           12:14 p.m.

11   Before:

12                   HON. PAUL A. ENGELMAYER,

13                                           District Judge

14                          APPEARANCES

15   LAW OFFICES OF SCHWARTZ & PERRY
          Attorneys for Plaintiff
16   BY:  BRIAN HELLER
          DAVIDA S. PERRY
17
     WHITE & CASE
18        Attorneys for Defendant
     BY:  GLENN M. KURTZ
19        KIMBERLY A. HAVIV
          EVELYN A. FANNERON
20

21

22

23

24

25
```

FCBLTAFA

1          (Case called)

2          THE COURT:  We're here on a partial motion to dismiss

3    made by the defense.  I'll hear briefly from the defense.

4          May I ask you just to reset me in the case.  There's

5    no motion to dismiss the gender claim?

6          MR. KURTZ:  That's correct, your Honor.

7          THE COURT:  Has discovery been proceeding?

8          MR. KURTZ:  Discovery is proceeding, your Honor.

9          THE COURT:  What's the status of discovery?  Just tell

10   me about it.

11         MR. KURTZ:  There's been some exchange of documents on

12   our end.  We're continuing to collect and go through documents.

13   It's been a pretty significant effort.  We have documents that

14   are housed overseas and in Asia.  We've collected hundreds of

15   thousands of documents that we are running electronic search

16   terms through and reviewing for responsiveness for privilege.

17   We've made a couple of productions.  It's going on a rolling

18   basis, and we still have some work ahead of us.

19         THE COURT:  Any idea when the document production

20   aspect of discovery will be complete?

21         MR. KURTZ:  Well, I would think in January from our

22   standpoint.

23         On the plaintiff's side, and I don't want to pre-stage

24   anything, but we have a dispute as to the documents that we

25   think we're entitled to and some information we think we're

FCBLTAFA

1    entitled to.  We intended to put that in the front of your

2    Honor pursuant to your rules through a three-page letter.

3    We're basically done with it, but I didn't want to end up

4    blindsiding you or putting counsel to the effort of having to

5    respond to it or feel like they had to respond to it at the

6    same time they're preparing for today's application.  So we'll

7    probably file it on Monday.

8          THE COURT:  The only problem is you file it Monday and

9    they respond on Thursday, it's going to be very hard for me to

10    resolve that before the holidays.

11          MR. KURTZ:  I understand that.

12          THE COURT:  What's the time sensitivity of this for

13    you?

14          MR. KURTZ:  None whatsoever, your Honor.

15          THE COURT:  Fine.

16          MR. KURTZ:  We just need to make sure we get the

17    documents.

18          THE COURT:  I appreciate the heads up.

19          Do you have a timetable for when depositions begin?

20          MR. KURTZ:  Well, I think our view is that depositions

21    should take place, at least we would want to start our

22    depositions of the plaintiff and people like that only after

23    we've received full production.  So it will be keyed to your

24    Honor's ruling on the matter.  The plaintiffs may have a

25    different view, but they haven't asked us for a deposition yet.

FCBLTAFA

1          THE COURT:  All right.  Thank you.  So I'll hear

2     briefly argument as to the one claim that you've moved to

3     dismiss.

4          MR. KURTZ:  Now, one preliminary matter I wanted to

5     raise on this, and I don't know who joined us in court, but

6     during today's argument I intend to reference material that was

7     submitted to the Federal Reserve Bank of New York.  The Federal

8     Reserve Bank, the Fed, has viewed that as confidential.

9     Because of that, we've been filing it under seal and I think

10    that I in effect need a clear courtroom.

11         THE COURT:  You're not going to get it.  That's

12    ridiculous.  To be very honest with you, there's no reason why

13    the documents in question can't be referred to at a level of

14    generality so as not to compromise anybody's confidentiality

15    interests.  But this is the United States.  We have an open

16    courtroom here.

17         MR. KURTZ:  Understood, your Honor.

18         THE COURT:  The Pentagon papers got published, this

19    letter can be exposed.

20         MR. KURTZ:  We're not invoking the confidentiality

21    concern.  I'm repeating it.

22         THE COURT:  I appreciate it.  But it's one thing for

23    the document itself to be under seal; I get that.  But for you

24    to be able to discuss it in court, each of you is a good enough

25    lawyer to find a way to capture the points that matter without

FCBLTAFA

1   sending the banking system into collapse.

2           MR. KURTZ:  I understand, your Honor.  Can I have my

3   colleague approach the Court with a little deck of materials

4   that I intend to review?

5           THE COURT:  Sure.  By all means, let's hand up a copy

6   for me and my law clerk.

7           MR. KURTZ:  I assume your Honor is a little short on

8   time and so I'm going to go right into the claims.

9           THE COURT:  By the way, let me apologize -- I should

10  have at the beginning -- for starting late.  I had the

11  unexpected development of a 25-defendant indictment being

12  unsealed this week and the initial conference being right

13  before this.

14          MR. KURTZ:  No issue at all.

15          THE COURT:  Go ahead.

16          MR. KURTZ:  I'm happy we were in the right place.

17          THE COURT:  Me too.

18          MR. KURTZ:  Your Honor, as we raise in the motion, and

19  I'll go through today at least two of them, there's three

20  independent grounds supporting dismissal of the action.

21          And the first one is really I think the simplest.

22  It's that the claims that the plaintiff brings or brought on

23  the claim does not report a, quote, possible violation of law

24  as is required under the statute.  The plaintiff does not

25  identify in the complaint or response to the motion to dismiss

FCBLTAFA

1    any law that was possibly violated.  And, to the contrary, the

2    memo specifically stated there was no applicable law or

3    regulation, and I reproduced on slide No. 1 a portion of the

4    memorandum.

5            THE COURT:  Can you just help me understand -- and I

6    think you should be able to describe this in a way that doesn't

7    compromise anyone's interests -- there's a technical quantity

8    to the background issue.  What's the issue about as to which

9    guidance is being sought?

10           MR. KURTZ:  There was a transaction between banks

11   where Agricultural Bank of China, ABC for short, is acting as

12   an intermediary bank.  And the transactional documents that are

13   supplied to the intermediary bank refer to the transaction

14   parties by alphanumeric designations and not by name.

15           THE COURT:  Alphanumeric meaning just acronyms?

16           MR. KURTZ:  Just letters and numbers.  It's the payor

17   or the payee.

18           THE COURT:  Sorry.  These are documents being filed

19   with the Fed, and the issue is what the regs or rules are as to

20   how you denote a party's name.

21           MR. KURTZ:  The question I think was from a compliance

22   standpoint, is there something that the bank should be doing

23   when it receives these types of transactional documents that

24   don't identify a name of a party but identifies the

25   transactional parties through alphanumeric designations that

FCBLTAFA

1    wouldn't allow you to know who they are.

2            THE COURT:  In other words, the rules of the road here

3    don't relate to the filing of the things with the Fed so much

4    as does the bank have an independent obligation when it gets

5    pseudonymous references to parties to demand that they be

6    identified with more clarity.

7            MR. KURTZ:  That's right.  But the banks are, and it's

8    coming from substantial financial institutions, it is something

9    that everybody is receiving.  If you look on slide one which is

10   the memorandum, there's a lot of references there to having

11   gone out to others to decide what they're doing about it and

12   speaking to consulting firms, speaking to other banks, speaking

13   to regulators to understand it.

14           The most important part is in the second paragraph

15   where compliance was not able to identify specific regulation

16   with respect to the scenario and then asks as you can see at

17   the bottom for guidance, not a reporting of violation, but

18   seeking guidance.

19           THE COURT:  So what would the Fed be looking to in

20   giving guidance, would it simply be free-form guidance or would

21   it be an application of a reg or a law?

22           MR. KURTZ:  What the Fed could have done if it elected

23   to do so is issue an advisory letter which does not have the

24   force of law, which we'll talk about shortly, but they didn't.

25           And otherwise the nature of the relationship is that

FCBLTAFA

1    the bank is very close with the Fed.  There's annual

2    examinations at which time the Fed actually camps out at the

3    bank.  There's quarterly reports.  There's all kinds of wire

4    transfer.  It's a pretty iterative relationship and the thought

5    here was to try to get some guidance.  It was considered a few

6    frontier.  That was some of the language used in there.

7              And if you look at slide two, this is the cover memo

8    that was submitted to the banking department.  And, again, it

9    says subject matter is a request for guidance, not the report

10   of a violation of law.  The first paragraph requests guidance.

11   The second paragraph, I'm sorry, the last paragraph also asks

12   for guidance.

13             And if you move to slide three and this one is really

14   very important to all this because in addition to what we saw

15   in one where there was a specific acknowledgment that all this

16   research had been done talking to banks, regulators and the

17   like and there is no applicable regulation, this one actually

18   says at the bottom that in asking for guidance, they say we

19   continue to operate in the most compliant manner.  So it's

20   actually not only asking for guidance, but it's recognizing

21   that the bank is in compliance, that it's not violating

22   anything.

23             THE COURT:  Suppose that the bank had used less

24   euphemistic language and said we're worried that we might be

25   violating the law rather than putting it this way.  I don't

FCBLTAFA

1    know why a bank would do that.  A well counseled bank would

2    presumably want to spot the issue but not in a way that

3    suggests consciousness of guilt.  What would that law be?

4         MR. KURTZ:  There is no law.  The plaintiff has not

5    been able to identify any law because there's no law.  There

6    was a response; no law was designated.  There's no violation of

7    law.

8         And your Honor put your finger on something which is

9    why would the bank do that.  Well, whistleblowing isn't really

10   a bank reporting.  That's not covered by whistleblowing.  When

11   you ask for best practices, there's no ask for best practices

12   statute.  There's whistleblowing.  So normally what happens is

13   you have someone outside of the bank that blows a whistle.

14        THE COURT:  But is there any reason why -- let's

15   suppose that Ms. Taft thought the bank was violating the law.

16   The best she could do would be to get the bank to water down

17   the memo to the Fed.  And having done that and the bank having

18   acceded to filing a watered down memo, let's suppose there was

19   massive retaliation against her for doing so.  Does the fact

20   that she was lobbying to get this whistle blown within the

21   bank, the fact that she holds her job, would that categorically

22   disqualify her from relief, assuming there's a real violation

23   of law here?

24        MR. KURTZ:  That's the issue is, one, you're looking

25   at the report itself and this is the record.  It's not some --

FCBLTAFA

1    and there's nothing in the complaint about whatever you're

2    posturing there.

3              THE COURT:  Understood.

4              MR. KURTZ:  But if we want to get into how the law

5    would work under those circumstances, if the bank reports

6    itself and seeks guidance as it does here, that's not

7    actionable.  That's a request to understand your obligations.

8    It's not a report.  Everybody knows what whistleblowing looks

9    like and it doesn't look like this.  It looks like here's the

10   problem, it's a violation of law, and I can't get anybody to

11   look at it.  It doesn't come from the bank itself.

12             THE COURT:  Let's assume this fact pattern.  Assume

13   that the bank retaliated against her and made her life

14   miserable and cost her her job, but what it retaliated for was

15   not a violation of law but the fulsomeness of her disclosure.

16   And, you know, in effect there had been a battle royal within

17   the bank about how to write this memo.  And although it doesn't

18   deal with a disclosure of a violation of law, there's clearly a

19   battle about how much or how little to share.  Just suppose

20   that were the case.  Would there be any legal relief she would

21   have?

22             MR. KURTZ:  There would not be.  The whistleblowing

23   statute applies only with respect to reporting of possible

24   violations of law.

25             THE COURT:  Is there any other statute that would

FCBLTAFA

1    protect an employee from retaliation if it were hypothetically

2    shown that the retaliation were solely for wanting to do more

3    as opposed to less fulsome in a letter seeking guidance?

4         MR. KURTZ:  Without having researched what other

5    remedies and under other statutes one might have, I'm not

6    aware, certainly, not under the Bank Secrecy Act which

7    requires -- the most recent court on this is the *Segarra* case

8    out of this district and I've got some slides on that as well,

9    your Honor, if you were to flip to page 5 of the slides.  This

10   is a Southern District case where there was a report about

11   Goldman Sachs not complying with certain conflicts of interest

12   provisions.  There was actually an advisory opinion, an

13   advisory letter that had been issued by the feds.  And so there

14   was something that was actually written on it.  They chose to

15   go public on it.  There was a way you were supposed to do this.

16   They were telling you to do that.  And there was no doubt that

17   there was a violation of that advisory letter.

18        The court dismissed the whistleblower claims because

19   an advisory letter doesn't have the force of law.  Even though

20   it's an utterance, even though it's a policy, it doesn't have

21   the force of law and it has to be a force of law.  So this

22   doesn't just happen to be a statute that's designed to protect

23   circumstances that your Honor is posturing here.

24        THE COURT:  Is there any follow-up in the

25   communications with the Fed that you can proffer to me, did the

FCBLTAFA

1      Fed come back and cite a law?

2              MR. KURTZ:  No.  I mean the feds came back.  There's

3      no allegation that there was adverse action or that there was

4      an instruction specific.

5              THE COURT:  I'm just curious.  Your position

6      understandably in light of the way this is all formulated is

7      that we're in an area where there is in fact no guidance of any

8      form, including even anything short of a regulation, and you're

9      seeking advisory --

10             MR. KURTZ:  -- guidance.

11             THE COURT:  A letter, and I'm curious whether the Fed

12     responded to Ms. Taft's letter, perhaps despite the way she

13     framed it in terms of guidance, the Fed came back and said

14     you're silly, there's a statute on point.

15             MR. KURTZ:  No.  They identified no governing law and

16     no violations that I'm aware of and no adverse consequences.

17     None of that is pled in any case.

18             THE COURT:  Even the subsequent communications don't

19     make this a legally marked area.

20             MR. KURTZ:  Correct.  Just before leaving *Segarra*,

21     it's notable that just this last September the Second Circuit

22     affirmed that decision.

23             THE COURT:  Understood.

24             MR. KURTZ:  So that's the law in this circuit.

25             I thought that what was interesting in the opposition

FCBLTAFA

```
 1    to this argument is plaintiff's assertion that now what she was
 2    really doing was pointing out a loophole.  That's not in the
 3    complaint.  That's not really before your Honor at all.  But I
 4    found it notable anyway because a loophole, it means there's an
 5    omission in the law that allows you to engage in the conduct.
 6    So you wouldn't have a violation of law if you have a loophole.
 7    That's why people try to close loopholes so people can no
 8    longer violate it.  Obviously, this is not a legislative
 9    statute.  If you find ways the law should be, the report would
10    have been to Congress presumably under those circumstances.
11            So the first global issue that's really very clean
12    here is that there's just no violation of law.  And *Segarra* is
13    the most recent case that addresses, but also the *Hill* case,
14    which is the Sixth Circuit case.  I've got a slide on that on
15    slide No. 8 where this was a more serious type of an inquiry
16    that was made because it involved a SAR filing.  As your Honor
17    knows, that's a criminal matter.
18            THE COURT:  I do.
19            MR. KURTZ:  And the Sixth Circuit said that's a
20    question.  That's a request for guidance.  That's not a
21    possible violation of law.  It's a request for guidance.  And
22    so that case was dismissed as well.  So that's the first
23    ground.
24            And, by the way, we also gave your Honor some other
25    cases.  I won't walk through them, but they're on pages 12 and
```

FCBLTAFA

1   13 of the brief –– the Ted Turner case, the Pen Royal case, the

2   Forrester case –– where courts also made clear that when you're

3   asking for guidance, you're not making a report.  And, of

4   course, the policy behind that is you're supposed to be able to

5   go to the regulators and talk about these things and without

6   having to undergo whistleblower issues.

7           The second issue that I wanted to address today is the

8   fact that this request for guidance was not a rogue employee

9   that submitted, as your Honor said, why would anybody do it

10  because people do it and then they're whistleblowers outside of

11  the bank.  This was done on behalf of the bank, as an agent for

12  the bank.  As I mentioned, there's a pretty substantial

13  relationship between the regulators and the banks.  They have

14  chief compliance officers, legal resources, as everybody else

15  does, lots of people who interact, and you interact with them

16  frequently in your job to identify problems.  If you see a

17  problem, you identify it.

18          THE COURT:  Let's suppose we can take the violation of

19  law issue out of this and change the hypothetical to a

20  no-doubt-about-it violation of law, but let's assume that

21  Ms. Taft in her compliance role is trying to say more and the

22  bank is getting her to say less and the memo that is submitted

23  is only part way and they then punish her for her advocacy that

24  the memo be more explicit or more detailed.  Does the fact that

25  she holds this job and that something was submitted on behalf

FCBLTAFA

1    of the bank disentitle her to whistleblower credit?  That seems
2    improbable.
3          MR. KURTZ:  I don't think that hypothetical would give
4    rise to a whistleblower claim because you would have the first
5    report which was by the bank on behalf of the bank.  So you're
6    doing it as an agent, not as a whistleblower.  If you're
7    telling me that there were aspects of the conduct at the bank
8    that was not described in the report, then she failed in the
9    offering submitted to the regulators.  You have to submit it on
10   your own and you have to have it be a violation.
11         THE COURT:  Is it sort of an act/omission distinction
12   where if she is an employee, she can only be punished for that
13   which she says, not that which she is cowed from saying?
14         MR. KURTZ:  I think the way I would rephrase that is
15   mechanically, one of the elements of the claim is you have to
16   report to the regulators.  There's no whistleblower protection
17   if you don't report.
18         THE COURT:  So someone who would be a whistleblower
19   who is in trouble, who is checked, who basically says inside
20   you've got to report this, you're got to report that violation.
21   And ultimately the bank says if you do that, we're going to
22   punish you.  She doesn't do that and she gets punished anyway.
23         MR. KURTZ:  That's not whistleblower.
24         THE COURT:  What is that?
25         MR. KURTZ:  I guess you'd have to formulate some other

FCBLTAFA

```
 1    claim based on -- whistleblowing, I think the law is absolutely
 2    black letter clear and I think there's a number of cases and we
 3    could submit them to your Honor if you want after this hearing
 4    that says the prerequisite is the whistleblowing.  So, in other
 5    words, she says I'm about to blow a whistle and you grab the
 6    whistle and say I'm going to mute the sound and then you fire
 7    her, she hasn't whistle blown.  She has whatever issues she
 8    has, but she doesn't have whistleblowing because she didn't
 9    blow the whistle.  She didn't make the report.  It's just the
10    way the statute works.
11            THE COURT:  In other words, the statute, from a policy
12    perspective, you're saying might, if you will, have a hole
13    insofar as it permits the stifling of the blowing of the
14    whistle, but it doesn't provide a remedy for a person who is
15    stifled before they get to blowing the whistle.
16            MR. KURTZ:  Yes.  That's not how the statute works.
17    There may be other ways that Congress would like to address
18    that behavior, but that's effectively an employment matter and
19    that's really not what Congress is normally playing.  I will
20    say there are other statutes that provide remedies for internal
21    reporting, but the Bank Secrecy Act, which is the only statute
22    that's before your Honor, the only claim here, doesn't have
23    that provision, and instead it requires you had to blow the
24    whistle.  If someone kept you from blowing the whistle, you're
25    not a whistleblower.
```

FCBLTAFA

1          THE COURT:  What's your best case that says you have

2     to actually blow the whistle?

3          MR. KURTZ:  I don't think that was a part because

4     you're giving a hypothetical what wasn't in the case.  So I

5     will be happy to provide your Honor with those case cites.

6          THE COURT:  Without arguing the point, I'm happy to

7     get a letter from you just identifying authority.  And,

8     plaintiff, you may do the same, but I'm not looking for

9     argument.  Just by the end of Monday if you each want to get me

10    a letter that literally addresses the issue, identifies legal

11    authority on the proposition that the failure to blow the

12    whistle, if you will, that the statute doesn't reach

13    communications not made.

14         MR. KURTZ:  Nonwhistles.

15         THE COURT:  Right.  Just give me the case and the pin

16    cites.  I don't need or invite argument.

17         MR. KURTZ:  Sure.  We will do that, your Honor.

18         Then for the rest of the second point where it's on

19    behalf of the bank, you'll see from the record that she even

20    communicates to the New York Fed that there was a lot of delay

21    in the memo because there was a lot of internal discussions to

22    address it.  Even the complaint admits that the report went in

23    for the bank with the bank's permission and so on.  Banks can't

24    report on themselves.  That's not what whistleblowing is.

25    Plaintiff hasn't cited a single case where there a

FCBLTAFA

whistleblowing claim is sustained where it went in on behalf of
the bank.  "We" is used all throughout.

Also just to go back to the first point, the plaintiff
also hasn't been able to cite a single case where a
whistleblowing claim was sustained where there was not a
possible violation of law identified, specifically identified.
All the cases go the other way and we cited them.

There's sort of a related topic in here which is what
happens when you don't actually report on behalf of as an agent
of a bank, but nonetheless that reporting would have been
within the scope of your duties and responsibilities.  The *Wolf*
case, which I have reproduced some of on page 13, addresses
that circumstance.  In that case the court found that where it
is your job to identify compliance issues and report them, you
have a duty to the employer to do that because clearly the
employer always wants to report it.  It's only an individual at
the employer who could have an issue with it.  And so you don't
get a claim.

There's a few Fair Labor Standards Act claims.  That's
not our statute, but by analogy on slide 14 I've reproduced
some of that where if the employee doesn't step outside its
role, then it's not protected.  And the First Circuit's case
where they say never crossed the line from being an employee
merely performing his job to an employee lodging a personal
complaint and they didn't engage, therefore, in protected

FCBLTAFA

1   activity.

2          Now, in addition to the fact that there's an agency

3   relationship and this was done for and on behalf of the bank

4   and with the bank's letterhead and so on, this also is a chief

5   compliance officer and so it was within her scope of duties.

6   The plaintiff relies that this is the kind of legal issue that

7   we're facing on this one.  Again, it doesn't have a lot to do

8   with the agency, but it's an additional ground.  Plaintiff

9   relies on *Balko*, a Southern District case.  Again*, Balko* didn't

10  have –– this was an actual rogue reporter.  It wasn't one of

11  the agency cases.  But, in addition, it's not a case that was

12  decided under our statute.  It was decided under the

13  Whistleblower Protection Act.

14         And if you turn to page 16, you'll see why that's

15  really significant.  That statute, as the court held, was

16  amended in 2012 and specifically provided that an employee's

17  claim was not excluded because it was made during the normal

18  course of duties.  Plaintiff's claim here is not brought under

19  the Whistleblower Protection Act.

20         THE COURT:  Could it have been brought under that

21  statute?

22         MR. KURTZ:  There was originally a claim brought under

23  that statute, but we're not federally insured.  So that claim

24  was voluntarily dismissed.

25         THE COURT:  I see.  Was there a reason why the scope

FCBLTAFA

```
 1   as to these matters of the Bank Secrecy Act and the

 2   Whistleblower Protection Act appears to be a little different?

 3           MR. KURTZ:  I'll turn again to page 17 to give you the

 4   consequence.  It's different because Congress chose in the

 5   Whistleblower Protection Act -- which is different -- there's

 6   different standards of proof; there's differences in the

 7   statute -- they chose to amend that statute specifically to

 8   permit employees to bring claims not when they're acting as an

 9   agent, but claims even if they're reporting within the scope of

10   their duties and responsibilities.  They didn't do that.

11           THE COURT:  Any reason why?  I'm trying to understand

12   why Congress would draw that distinction.

13           MR. KURTZ:  It's not clear why Congress did that.  But

14   what is clear is the black letter law that when you're

15   construing a statute, if they amend one and they don't amend

16   another, that means something.  That's intentional.  That's

17   purposeful.  So for whatever reason, Congress thought it was

18   appropriate to make an exclusion in the Whistleblower

19   Protection Act.  They have not done that -- for good reason or

20   for bad reason, I won't comment on it -- they have not adopted

21   any such amendment with respect to the Bank Secrecy Act.  And

22   so that's why *Balko* wouldn't apply here, or, if it did apply,

23   then it would get it wrong in my view because there's no

24   indication that it considered that issue, that it was briefed,

25   that it decided it.  But when Congress amends similar statutes
```

FCBLTAFA

1    in two different ways, it means something.

2              THE COURT:  All right.  Thank you.

3              Let me hear now from plaintiff's counsel.  Will it be

4    Mr. Heller?

5              MR. HELLER:  Yes.  Thank you, your Honor.

6              So just to give some background to what the technical

7    issue was for the Court, so the real issue was the Agricultural

8    Bank of China moves money all over the world from one country

9    to another.  And if they want to move money in U.S. dollars,

10   which they do, they have to have a branch in the United States,

11   which is why this branch was so important.  And they're moving

12   money all other the world with the home office in China.

13             As the chief compliance officer, Taft is responsible

14   for making sure that all the rules are complied with.  One of

15   those rules is the travel rule, which is part of the Bank

16   Secrecy Act.  It's codified in the CFR.  It does have the force

17   of law.  So already we've distinguished *Segarra*.

18             THE COURT:  Where is that cited in the complaint, this

19   travel rule?

20             MR. HELLER:  The travel rule itself is not cited in

21   the complaint.  And, frankly, the statute doesn't need to be

22   identified specifically.

23             THE COURT:  I'm just trying to -- some things have be

24   cited in the complaint for me to --

25             MR. HELLER:  We talked about the Bank Secrecy Act and

FCBLTAFA

1    BSA and anti-money laundering issues.

2              THE COURT:  All right.  You're saying that implicitly,

3    though not explicitly, her memo is reporting a possible

4    violation of the travel rule.

5              MR. HELLER:  Yes.

6              THE COURT:  You're going to have to help me here

7    because it's not in your complaint.

8              MR. HELLER:  Understood.  Frankly, we're way beyond

9    the standard that the complaint needs to be.  It needs to be a

10   short and plain statement.  It says she reported possible

11   violations of law.  They retaliated against her.  And what the

12   argument here on this motion is if you look at the argument, if

13   you look at the facts in the complaint in the light most

14   favorable to the defendant, there's an argument that the case

15   should be dismissed.

16             THE COURT:  Wait.  But if an element of this is a

17   possible violation of law and no law is specified in the

18   complaint or in the cognizable document which appears to be

19   seeking guidance, don't you at least have to identify what the

20   law would be?

21             MR. HELLER:  We did.  We identified the Bank Secrecy

22   Act.  To say we have to identify --

23             THE COURT:  Is the travel rule a subset of the Bank

24   Secrecy Act?

25             MR. HELLER:  Yes.  Yes.  But the technical aspect of

FCBLTAFA

1    this, to have to put this in a complaint seems onerous and

2    unnecessary.

3         THE COURT:  Sorry.  Now you're provoking me.  How

4    onerous would it have been to cite the travel rule if you

5    actually had a violation of law in mind?  Unpack for me the

6    onerousness to you of citing it.

7         MR. HELLER:  If we had just written that she alleged

8    violations of the Bank Secrecy Act travel rule provision, if we

9    had just added that clause travel rule, that seems --

10        THE COURT:  The problem is the memo that actually was

11   submitted on its face looks for all the world like it is

12   seeking guidance in an area as yet uncharted by the law.

13        MR. HELLER:  Yes, and that's what it is on its face

14   and that's really what the heart of this is.  There needs to be

15   context put to this memo because like the complaint alleges,

16   she first brought her concerns to the bank and they told her

17   you're wrong.

18        And just to give some background to what her concerns

19   were, the bank is moving money all throughout the world.  Her

20   job as the chief compliance officer is to make sure that the

21   bank is able to see where the money originated and to where

22   it's going and that's what's required by the Bank Secrecy Act

23   and that's what her job is to ensure.  She's personally

24   responsible to make sure that's the case.  If it's violated,

25   she's subject to $25,000 per day fines, criminal sanctions,

FCBLTAFA

1    injunction against working in the industry.  We cited in our

2    motion, a year ago, December 2014, the United States brought an

3    action against a chief compliance officer for failing to

4    enforce the Bank Secrecy Act.

5            THE COURT:  The travel rule or something else?

6            MR. HELLER:  I believe it was the travel rule and

7    possibly others.  But, regardless, the Bank Secrecy Act is

8    really just a number of anti-money laundering regulations that

9    are in place, a whole amalgamation.  It's not just one rule.

10   It's this grouping of statutes and regulation.

11           And so she said we can't see where the money is coming

12   from or where it's going to.  And the bank's response was it's

13   okay, there's this other regulation that says we don't have to

14   do it.  And she says I don't think that's acceptable.  I don't

15   think that's going to pass with the regulators and I'm on the

16   hook for this, so we need to go forward with this.  That's what

17   this resistance that she felt was.

18           So, ultimately, like the complaint says, they let her

19   go to the bank with this euphemism of we're seeking guidance,

20   that there's no regulation at issue.  What she's really

21   pointing to is this hole to get around the strict regulations

22   of the Bank Secrecy Act, which is really at the direction of

23   the home office in China.

24           THE COURT:  The bank approved the memo as submitted to

25   the Fed, correct?

FCBLTAFA

1          MR. HELLER:  As submitted to the Fed, yes.

2          THE COURT:  So to the point that I was speaking about

3     with defense counsel, it sounds as if the retaliation that

4     you're spotting is not that she's being retaliated for

5     submitting a memo that the bank permitted, but rather for her

6     advocacy, which was denied, that it didn't say more.  Is that

7     correct?

8          MR. HELLER:  No, your Honor.  Respectfully, it started

9     when the Fed responded to her memo because up until -- she sent

10    the memo.  They said this is nothing.  This isn't a problem.

11    You're wrong.  And then the Fed responded.  As counsel prefaced

12    his comments, the Fed's response is highly confidential and was

13    not something that we believe should be put in the memo.

14    Frankly, we received a phone call from the Fed the day after we

15    filed this lawsuit about what we put in the initial complaint.

16    So our ability to talk about what the Fed said is hampered and

17    limited by confidentiality.

18         THE COURT:  Look, then you attach something that's

19    sealed.  The reality is I've got to be able to make sense --

20    the Fed's response is cognizable on the motion to dismiss,

21    correct?

22         MR. HELLER:  And it's in the complaint.  What it says

23    is as a result of the Fed's response, the bank took action.

24    They hired an attorney and they became angry at her because

25    they had to fix a number of things before the next

FCBLTAFA

 1   investigation by the regulators, before the next audit, if you

 2   will.  And that's when the retaliation started, in February.

 3   So what really is being alleged, this idea that the memo didn't

 4   say anything, it's taking it out of context.

 5        THE COURT:  Wait.  The Federal Reserve Bank of New

 6   York responded by letter.  I have no idea what the Fed said.

 7        MR. HELLER:  And we don't have the letter, your Honor.

 8   We actually made an application to the Fed to get those

 9   documents and we received them this morning before we were

10   leaving for court.

11        THE COURT:  Have you reviewed them?

12        MR. HELLER:  No.  We were literally walking out the

13   door when we got them.  But that's why this case is not ripe

14   for a motion to dismiss.  This case is all about context.

15        THE COURT:  Why isn't it ripe for a motion to dismiss

16   with leave to replead?  Rather than just sort of saying there

17   may be a pleadable claim here, why isn't the other way to say

18   you're not there, but if you feel there's something that you

19   can add that would fortify the claim, you ought to have a right

20   to replead, why isn't that the way to better deal with it?

21   Usually we don't say you can go forward because you might be

22   able to plead a claim; it's you can't go forward but have at it

23   again.

24        MR. HELLER:  That would change the rules.  That would

25   change the burden on a compliant.

FCBLTAFA

1      THE COURT:  No.  The rule would be you have a right to

2  amend.

3      MR. HELLER:  But initially, instead of having a short

4  and plain statement, we'd have to have essentially a bill of

5  particulars that looking at the complaint the way it's written,

6  looking at the amended complaint, it clearly sets forth the

7  cause of action.  What the defendant does is say, well, look at

8  these extraneous facts.  Look at this memo in the light that we

9  want you to.  We didn't attach the memo.  They're saying look

10 at the memo in the light we want you to and then you'll see

11 there's no claim.  If you look at it in the light the plaintiff

12 says, its full of euphemisms.  And like your Honor had pointed

13 out when asking questions to defense counsel, it's hesitant.

14 Nobody is going to say we think there's a violation of law.

15 For plaintiff to have to somehow respond to that in the

16 complaint, that seems like a very difficult task because

17 there's no way to do that.  There needs to be testimony.

18     THE COURT:  There would have been the possibility in

19 the complaint of actually unpacking more than citing something

20 general like the Bank Secrecy Act what the violation of law

21 presented was.  It certainly wasn't obvious to me that the

22 practice on which guidance is sought was one as to which there

23 was a law in place that was being violated, or arguably, as

24 opposed to an area where the law had not spoken and where the

25 bank was thoughtfully trying to spot a hard issue.  Those are

FCBLTAFA

1   very different things and there are loads of areas of

2   regulation that don't involve an as yet charted law.  It is

3   candidly unhelpful to simply say the Bank Secrecy Act and then

4   assume that I can say, oh, that's a violation of law because

5   some statute got mentioned.  You can say the U.S. code too, but

6   at some level you need to explain what the asserted violation

7   is of.

8           MR. HELLER:  Absolutely agreed.  But where is that

9   setting, where does the plaintiff have to come forth with

10  evidence about what the violation was.

11          THE COURT:  Not evidence.  It's the law as part of the

12  statute.  And the problem is that I'm a little bit puzzled by

13  the resistance to the idea that the right way to deal with this

14  might not be to give you a chance to replead if a problem like

15  this is found.

16          MR. HELLER:  We certainly could replead, but frankly

17  we're going to have to file it under seal.  And the concern

18  that the plaintiff has is how does this affect any further

19  pleadings that any plaintiff might have in the whistleblowing

20  context that now there has to be a specific allegation.  And

21  frankly we're going to need evidence about the context of

22  writing this memo, about the conversations that were had, the

23  emails that were had, the emails that we're waiting for about

24  how this document was drafted because there was conversations

25  that the plaintiff had with the Fed about what the violations

FCBLTAFA

1    were that she made the defendant aware of.

2              THE COURT:  Is the allegation here that your client is

3    being punished for what she said or what she was cowed from

4    saying?

5              MR. HELLER:  For what she said, your Honor.  I know

6    that your Honor is asking about where there was no complaint.

7    She blew the whistle and they didn't appreciate the gravity of

8    what she did.

9              THE COURT:  She blew a whistle that they gave to her

10   and they authorized the extent of the blowing of the whistle.

11   In other words, you acknowledge to me that the bank even might

12   have preferred otherwise, acceded to her filing this memo; and

13   the memo is on its face written on behalf of the bank within

14   the scope of her duties.  Much as they may have resented and

15   been unhappy about having a, if you will, squeaky clean

16   employee, I have to evaluate this in the light of statutory

17   terms, not norms and ethics.

18             If the statute applies to whistleblowing, does it

19   apply where a compliance officer is submitting a memo that was

20   authorized by the bank to be sent, whatever their subjective

21   feelings were about it?

22             MR. HELLER:  The answer to that in this district is

23   yes.

24             THE COURT:  What case?

25             MR. HELLER:  The *Balko* case that defendant has

FCBLTAFA

desperately tried to distinguish.  But in *Balko*, it was a 2014

case, that was not a rogue compliance officer like defendant

alleged.  That was someone who was part of the bank doing their

job for the bank and the defendant argued that that was part of

her job, that this plaintiff in *Balko* going to the Fed --

THE COURT:  Defense says *Balko* is a different statute.

MR. HELLER:  They relied on *Wolf*.  *Wolf* was a

different statute.

THE COURT:  Sorry.  This isn't a schoolyard.  It's a

courtroom.  I'm not here to evaluate what they did in some

other context.  I've raised with you a distinct issue they

raised, and you need to explain to me rather than throwing a

mud ball at the defense why the fact that *Balko* is based on a

different statute with different language doesn't undermine its

application here.  Please answer that question.

MR. HELLER:  *Balko* is not based on different statutory

language.  It's based on a different statute with identical

statutory language just covering different entities.  And,

frankly, it cites a number of other statutes.

THE COURT:  *Balko* is I gather applying

Section 2302(2).  That's at page 16 of the slide here.  Is

there comparable language in the Bank Secrecy Act?

MR. HELLER:  Yes, your Honor.

THE COURT:  What is it?

MR. HELLER:  The exact whistleblower provision is

FCBLTAFA

1    identical in the Bank Secrecy Act, in FIRREA, in the federal

2    credit, they're all the same language.  And, frankly, in *Balko*

3    the court noted this issue.

4              THE COURT:  In other words, this provision, 2302

5    basically says that disclosure made during the normal course of

6    duties of an employee is not excluded... from coverage under

7    the WPA.  You are representing to me as an officer of the court

8    that that language is in the Bank Secrecy Act?

9              MR. HELLER:  No, your Honor.  What I'm representing

10   that in *Balko*, the court applied this to a comparably worded

11   statute.

12             And if I might just go back a little bit further.  The

13   reason why I bring up *Wolf*, the case defendant cites, in *Wolf*

14   the court said that if the person is doing their job in the

15   course of their duties, they're not protected as a

16   whistleblower and it cited the Whistleblower Protection Act in

17   support of that.  And a year later, Congress amended the

18   Whistleblower Protection Act with this exact provision.  And in

19   *Balko* the court said, well, *Wolf* said that, but then Congress

20   amended the Whistleblower Protection Act so the law is changed.

21   So what I'm saying --

22             THE COURT:  Right, but is the notion that the later

23   change to the Whistleblower Protection Act without changing the

24   Bank Secrecy Act implicitly carries an intent to change the

25   Bank Secrecy Act?  Presumably, the Bank Secrecy Act is adopting

FCBLTAFA

1    the law as it stood at the time of its enactment as opposed to

2    giving a blank check to revise the terms of the BSA as other

3    statutes but not a change.  That's unusual.

4           MR. HELLER:  Because there's many different

5    whistleblower statutes.  And in *Balko* what the court said was

6    because it recognized this concern and said because the Second

7    Circuit has not spoken directly about the requirements for

8    claims brought under this particular -- it was the Federal

9    Credit Union Act, the court relies on this circuit's

10   interpretation of comparably phrased antiretaliation statutes

11   in construing and applying the FCUA to Balko's claim.  It

12   relied on cases talking about Sarbanes-Oxley, about FIRREA.

13          THE COURT:  Did it rely on any statutory provision

14   adopted after the adoption of the statute at issue?

15          MR. HELLER:  Well, this is one of a few cases that

16   came out after the adoption of that provision, and it applied

17   it to a law other than to the Whistleblower Protection Act.  So

18   the argument that unless Congress applies this exact provision

19   to every single whistleblower provision, that was rejected in

20   *Balko*.  They found it without merit.  It was very strong

21   language that *Balko* had.  And it said Congress overruled the

22   reasoning of those cases, citing *Wolf*, by adding subsection F

23   to the WPA which states that employee is not excluded from

24   whistleblower protection simply because her disclosure is made

25   during the normal course of her duties and cites another case

FCBLTAFA

```
 1   law, Leshinsky from Southern District in 2013, that said in

 2   rejecting the federal circuit's narrow reading of the WPA,

 3   Congress made crystal clear its intent that any whistleblower

 4   who reports misconduct by one of the enumerated channels be

 5   protected under federal whistleblower statutes.  And that makes

 6   sense given the regulatory scheme that Congress has in place.

 7           As chief compliance officer, it is Taft's job to make

 8   sure the bank stays honest.  They talk about the relationship

 9   that the bank has with the Fed, with the regulators; that's

10   what the compliance officer does.  And she's personally

11   responsible.  So there's this tension because and, frankly, to

12   say she's not protected would really -- that's why the WPA was

13   amended, so that chief compliance officers doing their jobs are

14   protected against whistleblowing.  And I would submit that we

15   at least need a record on this before any real decisions can be

16   made about what happened in this case.

17           THE COURT:  All right.  Thank you.

18           Just a couple minutes of rebuttal.

19           MR. KURTZ:  Your Honor, I only want to make a couple

20   of brief points.

21           One, on the travel rule, that's not included in the

22   complaint.  That's not included in the memorandum.  Counsel

23   said --

24           THE COURT:  Do you have any knowledge about what the

25   travel rule says?
```

FCBLTAFA

1          MR. KURTZ:  I don't have any knowledge about any

2     violations of the travel rule and I haven't studied it.

3          THE COURT:  Your point is it's not cognizable; it

4     hasn't been pled.

5          MR. KURTZ:  That's right.  We didn't brief it because

6     it wasn't pled.  It wasn't in the memo.

7          But counsel said that the memo is the operative

8     document and it is what it is on its face and that she was

9     punished for what she said in response to your Honor's question

10    about is it for what she said or didn't say.  That's the

11    document that governs.  It's a part of the motion to dismiss;

12    it's properly a part.  And it asks for guidance and it

13    specifically says that we weren't able to identify any

14    regulation.  So, and I don't think the plaintiff is alleging

15    that she lied to the regulators.

16         THE COURT:  Your point is that was the place in which

17    to say we're seeking compliance as to whether we comply with

18    the travel rule or not.

19         MR. KURTZ:  Correct.

20         THE COURT:  On the contrary, she said, appears to be a

21    free field.

22         MR. KURTZ:  Correct.  So she's not blowing the whistle

23    on a violation.  She's saying the exact opposite -- there's no

24    violation, there is no law, but can you give us some guidance

25    on it anyway.

FCBLTAFA

```
1              The next point I wanted to really briefly address is
2    Segarra is one of the cases that talks about the action being
3    tied to what you say, not to what you don't say; and it's
4    particularly relevant to counsel's argument about some alleged
5    unpled scheme to prevent her from saying what she wanted to
6    say.  It says at page 310, quote, Section 1831(j) protections
7    attach when an individual discloses protected information to a
8    third party, not when she is asked to alter that information.
9    So it's not about concealment or omissions or anything like
10   that.
11             I think it's clear, but just to make sure it's clear
12   that Section 2302(2), that specifically says if you're an
13   employee acting in the scope of your duties, you're not
14   precluded, that's an amendment to the WPA.  That's not an
15   amendment to Bank Securities Act.
16             THE COURT:  I think Mr. Heller's argument is that this
17   is part of a web of bank secrecy statutes and the BSA was
18   intended to pick up, if you will, the law vis-a-vis other bank
19   secrecy statutes.  Why isn't a subsequent amendment to one of
20   those statutes also something that in effect informs the
21   meaning of the BSA.
22             MR. KURTZ:  It actually does the opposite.  There's
23   dozens of whistleblowing statutes.  Some of them are
24   incorporated, as I mentioned, FIRREA incorporates the WPA.  So
25   he would have been right with respect to the dismissed claim.
```

FCBLTAFA

| | |
|---|---|
| 1 | The Bank Secrecy Act does not incorporate. |
| 2 | THE COURT:  What's the reason for that?  Is there some |
| 3 | reason why there's more solicitude to the employer in the bank |
| 4 | secrecy context? |
| 5 | MR. KURTZ:  I'd have to go back and study it.  They |
| 6 | actually have reduced burdens of proof with some of them.  So |
| 7 | they made decisions that the Whistleblower Protection Act is |
| 8 | subject to different standards as compared to Bank Secrecy Act. |
| 9 | I haven't gone and done any informed review as to why that |
| 10 | happened -- was it a different Congress, was it a different |
| 11 | interest, was there something else that drove it.  But from a |
| 12 | technical standpoint, that amendment amended not only the |
| 13 | Whistleblower Protection Act, but also all the baby |
| 14 | whistleblowing acts that are referenced and picked up and the |
| 15 | Bank Secrecy Act isn't one of them.  So it's just as a matter |
| 16 | of law. |
| 17 | THE COURT:  In other words, the BSA doesn't have |
| 18 | language that serves as a lever or a hook into one of those |
| 19 | other statutes such that it is susceptible of being amended. |
| 20 | MR. KURTZ:  Correct.  There are several that are |
| 21 | amended -- FIRREA -- I'm sorry.  I put them on the spot. |
| 22 | THE COURT:  Final question.  Assuming that you prevail |
| 23 | on the motion to dismiss, is there any reason not to give the |
| 24 | plaintiff an opportunity to amend?  They have not amended |
| 25 | before. |

FCBLTAFA

1          MR. KURTZ:  They have amended.  We filed a motion to

2     dismiss.  Your Honor gave them an opportunity to amend.  They

3     took the opportunity to amend, and I think your Honor might

4     have ruled they'd have to show good cause.  And the reason I

5     don't think there's good cause is because this -- they still

6     have a case, your Honor.  We still have to deal with this

7     litigation.  But their memo is the whistleblowing.  Their memo,

8     you can't plead around your memo.  I know I have reported --

9          THE COURT:  Your point is if the memo on its face is

10    not whistleblowing, since the memo is a fixed thing --

11         MR. KURTZ:  Correct.

12         THE COURT:  -- there's no reason to give leave to

13    replead, as opposed to if there were a theory of under which

14    she was being retaliated against under some statute for her

15    advocacy not acted upon to report something.

16         MR. KURTZ:  Correct.

17         THE COURT:  In other words, something like that

18    conceivably could be the subject of an amendment, but not the

19    memo is your point.

20         MR. KURTZ:  That's correct.  And having a pleading

21    include new creative language to describe the operative

22    document that's a part of the record doesn't do anything.

23         THE COURT:  Thank you.  Go ahead.

24         MR. KURTZ:  I was going to make my last point.  I was

25    going to point out that the plaintiff has said that no one is

FCBLTAFA

1    going to say it's a possible violation of law, no one is going

2    to do that.  That's actually kind of telling because the people

3    who do that are whistleblowers.  That's what whistleblowers do.

4          And *Balko*, by the way, when I say rogue, I meant an

5    employee that was acting outside the management scheme as

6    opposed to on behalf.  And certainly if your Honor looks at

7    *Balko* you'll see that on page, for instance, just one cite on

8    page -- it's a slip opinion -- page 2, the court notes that

9    plaintiff was actually instructed to stop investigating the

10   fraud.  And she, ultimately, she didn't put in a complaint on

11   behalf of her department; she put it in personally.  That's the

12   only point I was making.

13         THE COURT:  Thank you.  I'll take the case under

14   advisement.

15         Counsel, you're welcome by the close of business

16   Monday to submit the memo of citations if you'd like.

17         MR. KURTZ:  We'll do that.  Thank you very much, your

18   Honor.

19                             o0o

20

21

22

23

24

25