# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATASHA TAFT | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-CV-05321 (PAE) |
| | ) | |
| v. | ) | Hon. Paul A. Engelmayer |
| | ) | |
| AGRICULTURAL BANK OF CHINA LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO DISMISS CLAIM II OF THE SECOND AMENDED COMPLAINT**

WHITE & CASE LLP
Glenn M. Kurtz
Tal Marnin
Kimberly A. Haviv
1155 Avenue of the Americas
New York, New York 10036
Tel. (212) 819-8200
Fax. (212) 354-8113
*Attorneys for Defendant*
*Agricultural Bank of China Limited*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT .................................................................................................................................2

      A.      The Communications With The FRBNY Were Not Independent Acts Of Taft's ..................................................................................................................................2

      B.      Taft's Call To Hilton Cannot Support A Whistleblowing Claim Regardless Of The Fact That Taft Did Not Act Independently ........................4

      C.      Taft Has Not Pleaded a Report of Any Possible Violation Of Law .................6

            1.      Taft Now Concedes That She Did Not Report A Possible Violation Of Law By ABC As An Intermediary Bank .........................7

            2.      Taft's New Theory That ABC Was Not an  Intermediary Bank Does Not Save the Claim ....................................................................8

      D.      The FRBNY Is Not A "Federal Supervisory Agency" ...................................10

CONCLUSION .............................................................................................................................10

# TABLE OF AUTHORITIES

Page

## CASES

Balko v. Ukrainian Nat'l Fed. Credit Union, No. 13-Civ-1333 (LAK) (AJP), 2014
  U.S. Dist. LEXIS 42427 (S.D.N.Y. Mar. 28, 2014) ............................................7, 10

Clipper Wonsild Tankers Holdings A/S v. Biodiesel Ventures, No. 07-cv-8704
  (DC), 2009 U.S. Dist. LEXIS 119479 (S.D.N.Y. Dec. 16, 2009) ............................9

Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63 (2d Cir. 1998) ........................4

Garrett v. Langley Fed. Credit Union, 121 F. Supp. 2d 887 (E.D. Va. 2000) ................4

Gorman-Bakos v. Cornell Cooperative Extension, 252 F.3d 545 (2d Cir. 2001)...........2

Grant v. N.Y. State Office for People with Developmental Disabilities, No. 12-
  CV-04729, 2013 U.S. Dist. LEXIS 107565 (E.D.N.Y. July 30, 2013) ...................5

Kittel v. C-Plant Fed. Credit Union, No. 5:08-CV-00114-R, 2010 U.S. Dist.
  LEXIS 47025 (W.D. Ky. May 12, 2010)..................................................................4

McNett v. Hardin Community Federal Credit Union, 118 F. App'x 960 (6th Cir.
  2004) .........................................................................................................................4

Motorola Credit Corp. v. Uzan, 978 F. Supp. 2d 205 (S.D.N.Y. 2013) ........................9

Qureshi v. Nassau Bd. of Coop. Educ. Servs., No. CV 11-2444, 2013 U.S. Dist.
  LEXIS 63396 (E.D.N.Y. Mar. 13, 2013).................................................................5

Selah v. N.Y.S. DOCS Comm'r, No. 04 Civ. 3273, 2006 U.S. Dist. LEXIS 51051
  (S.D.N.Y. July 24, 2006) .........................................................................................2

## STATUTES, RULES AND REGULATIONS

12 U.S.C. § 248(k) ......................................................................................................10

12 U.S.C. § 1766(d) ....................................................................................................10

12 U.S.C. § 1784(a) ....................................................................................................10

31 U.S.C. § 5328(a) .................................................................................................4, 10

42 U.S.C. § 1983 ...........................................................................................................2

N.Y. U.C.C. § 4-A-104(2) ............................................................................................9

N.Y. U.C.C. § 4-A-105(1)(b)........................................................................................9

U.C.C. § 4-105(a)(2) ................................................................................................................9

U.C.C. § 4A-105(4) .................................................................................................................9

12 C.F.R. § 265.11 ................................................................................................................10

31 C.F.R. § 1010.100(jj) (2015) .............................................................................................9

31 C.F.R. § 1010.100(z) ..........................................................................................................9

Americas 91118950

## PRELIMINARY STATEMENT

As demonstrated in ABC's Opening Brief ("Op. Br."), Taft has not cured the deficiencies in her whistleblower claim.  One, Taft cannot allege that her communications with the FRBNY were unapproved by ABC, so she simply ignores the standards established in this Court's Decision.  Taft's responses that she was a "catalyst" for the report and that ABC did not "encourage" or "support" her have already been rejected by this Court and are irrelevant.  See infra at pp. 2-4.

Two, in an effort to avoid this Court's prior findings about the Memo, Taft pleads that ████████████████████████████████ during a call with the FRBNY that were unauthorized—and the record contradicts that allegation—but the SAC fails to plead that ABC knew about Taft's alleged secret report.  As a matter of law and fact, ABC could not have retaliated against Taft for a report it did not know about.  See infra at pp. 4-6.

Three, Taft did not report a "possible violation of law."  Taft has consistently alleged a possible violation of law by ABC as an intermediary bank for not retrieving certain customer information under the Travel Rule.  Taft now admits that ABC, as an intermediary bank, had no obligation to retrieve customer information under this Rule.  In an effort to avoid the defect in her claim, however, Taft now invents a new theory that ABC was not an intermediary bank, it was an originating bank.  Taft's new theory is irrelevant and wrong.  It is irrelevant because the SAC includes no such allegations.  Moreover, Taft never reported to the FRBNY that ABC was possibly violating a law as an originating bank, and no such issue was addressed in the FRBNY's Letter Response.  So there was no such whistle blown, and ABC cannot have retaliated against Taft for a report she never made.  The allegation also fails to state a possible violation of law because ABC was acting as an intermediary bank, just as Taft alleged.  See infra at pp. 6-10.

Four, the FRBNY is not a "Federal supervisory agency."  See infra at p. 10.

## ARGUMENT

### A.     The Communications With The FRBNY Were Not Independent Acts Of Taft's

This Court held that to state a claim the "bank officer must have acted independently, not with the bank's approval or authorization" (Decision at *7), and that Taft had not plausibly alleged that the Memo was "an independent act of Taft's," as opposed to a report made "with ABC's permission and approval" (id. at *8).  The SAC contains additional allegations about a call with the FRBNY, but concedes that Taft made the call with ABC's permission.  (Op. Br. at 12-13)  Unable to deny ABC's "permission and approval," Taft simply disregards this Court's holding and argues that "[t]he statute does not contain any requirement that the information be provided without the employer's authorization or approval."  (Pl. Br. at 1)  The Court's Decision is the law of the case.  See Selah v. N.Y.S. DOCS Comm'r, No. 04 Civ. 3273, 2006 U.S. Dist. LEXIS 51051, at *6, *22 (S.D.N.Y. July 24, 2006).[1]

Taft's other responses ignore the standards established by this Court, and rely on allegations that the Court has already rejected.  One, Taft claims that Defendant "flat out ignores the allegations" and "distorts the facts to create the false appearance that it supported and encouraged Taft's communications with the FRBNY."  (Pl. Br. at 11)  Plaintiff does not identify any distortions, but the issue is ABC's authorization and approval, not whether ABC was supportive or encouraging.  Thus, the Court has already found those basic allegations deficient.  See Decision at *8 ("To be sure, there are allegations in the Amended Complaint to the effect that ABC initially tried to prevent Taft from saying anything to the FRBNY.").

---

[1] Taft also argues incorrectly that Taft can pursue a whistleblower claim based on communications approved by ABC (Pl. Br. at 17-18), citing Gorman-Bakos v. Cornell Cooperative Extension, 252 F.3d 545 (2d Cir. 2001), but Gorman-Bakos considered the causation prong of a First Amendment retaliation claim under 42 U.S.C. § 1983, not whether employer-approved communications are whistleblowing activity.  See id. at 553.  Section 1983 is not a whistleblower statute at all, and a Section 1983 plaintiff must show only that "his speech was constitutionally protected."  Id. (citation omitted).

Two, Taft argues she "was the catalyst for those communications in the first place and, as such, is entitled to whistleblower protection."  (Pl. Br. at 13)  This allegation was also made in Taft's prior complaint, considered and found insufficient by the Court.  Decision at *8 ("These cues suggest that Taft took the lead within ABC in pushing for the report to be made and persuading her superiors to approve it.").   A chief compliance officer is almost always the "catalyst" for compliance-related questions to the regulators, but that does not make every compliance officer a whistleblower.  The issue is not who served as a catalyst, but whether the report was made with the approval of the bank.  Decision at *7-8.

Three, Taft's argument that it was "entirely inappropriate" for management to have had input into communications with regulators, suggesting that compliance officers somehow act alone in dealing with regulators, is also irrelevant to whether the report was authorized by ABC. (Pl. Br. at 17)  Indeed, the fact that ABC controlled the Memo demonstrates that it was ABC reporting, not Taft acting independently.  Taft's argument is also incorrect.  Independence does not somehow eliminate senior management from communications with regulators.  Indeed, the Board of Governors of the Federal Reserve System encourages compliance officers to work with senior management to address compliance concerns.  (Haviv Supp. Decl. Ex. A at 5-8) (Board Ltr. to Federal Reserve Banks, Oct. 16, 2008) ("Compliance independence should not, however, preclude compliance staff from working closely with the management and staff of the various business lines" and the "board, senior management, and the corporate compliance function are responsible for working together" to address compliance concerns.)

Four, Taft cites cases decided under the Federal Credit Union Act, claiming they "refute ABC's effort to create one single, restrictive narrative that Taft must establish."  (Pl. Br. at 12) ABC did not argue about a "narrative" Taft must establish, but rather whether she pleaded the

elements of a claim under Section 5328(a).  In any event, Taft's cases, decided under a different

statute, are inapposite as none of the plaintiffs acted with the authorization and approval of their

employers, as Taft did here.

**B.      Taft's Call To Hilton Cannot Support A Whistleblowing Claim
         Regardless Of The Fact That Taft Did Not Act Independently**

Taft's reliance on her call to Hilton fails for the additional reason that Taft has not

pleaded that ABC was aware of the additional criticisms she claims to have made.  Indeed, the

SAC specifically deletes the allegation that Taft "made ABC aware" of what she claims she said

on her own to Hilton by phone.[2]  Plaintiff does not address any of ABC's authorities holding that

a retaliation plaintiff must plead facts showing that the defendant knew of her protected activity,

nor could she because, absent knowledge, a defendant would have nothing to retaliate against.[3]

(See Op. Br. at 15-16)

Taft asks the Court to infer what is not pleaded—that ABC knew what she reported to

Hilton—based on her allegation that ABC enacted a rule that management needed to be involved

in future calls with the FRBNY.  (Pl. Br. at 14)  But management's interest in participating in

communications with its regulators does not in any way support a plausible inference that ABC

---

[2] Taft claims that ABC "tries to create the impression that Taft only had one conversation with Hilton" (Pl. Br. at 16), but that it is precisely what Plaintiff pleaded in the SAC.  (SAC ¶¶ 35, 37)  Taft reiterates ABC's point that the First Amended Complaint alleged "several calls," while the SAC deleted that allegation and pleads only one call (Pl. Br. at 16), but Taft cannot rely on deleted allegations from a superseded complaint to state a claim.  See Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."  (internal quotation marks and citation omitted)).  Moreover, Taft gains nothing by reference to her prior allegation because the Court deemed it "vague and conclusory" even before the reference to ABC's awareness was entirely deleted.  Decision at *24 n.2.

[3] Taft instead cites summary judgment cases—all of which reaffirm the requirement that a plaintiff show that the defendant was aware of the report—where there was evidence that the defendants were aware of the reports of wrongdoing.  See McNett v. Hardin Community Fed. Credit Union, 118 F. App'x 960, 964-65 (6th Cir. 2004) (regulators "[i]mmediately" approached defendant and "specifically asked" about improper alterations to loan documentation reported by the alleged whistleblower); Kittel v. C-Plant Fed. Credit Union, No. 5:08-CV-00114-R, 2010 U.S. Dist. LEXIS 47025, at *8-9, *10-11 (W.D. Ky. May 12, 2010) (regulator's testimony suggested he had "told C-Plant management that they had discovered the improper transactions when speaking with C-Plant employees"); Garrett v. Langley Fed. Credit Union, 121 F. Supp. 2d 887, 893-95 (E.D. Va. 2000) (regulator's statements were "tantamount to reporting [plaintiffs'] identities").  Here, Taft does not allege that ABC was aware of any report outside the matters discussed in the Memo.

Americas 91118950

was aware that Taft supposedly communicated different matters to the FRBNY during her call.
See Grant v. N.Y. State Office for People with Developmental Disabilities, No. 12-CV-04729,
2013 U.S. Dist. LEXIS 107565, at *29-30 (E.D.N.Y. July 30, 2013) (plaintiff failed to plead
defendant's knowledge of the report where plaintiff alleged he had contacted only his union
representative, who "told him she 'would contact'" defendant, "[a]bsent any allegation that [she]
actually contacted [the defendant]" (citation omitted)); Qureshi v. Nassau Bd. of Coop. Educ.
Servs., No. CV 11-2444, 2013 U.S. Dist. LEXIS 63396, at *14, *16 (E.D.N.Y. Mar. 13, 2013)
(where complaint did not "alleg[e] that anyone at the Board knew" about plaintiff's protected
activity, "plaintiff has fallen far short of nudging her claims 'across the line from conceivable to
plausible'" (citation omitted)); see also Memo at 2.  In fact, ABC could not have been aware of
this alleged new report given that no one from ABC other than Taft was on the call, Taft kept
secret from ABC ████████████████████████████████ and, as addressed in
the next paragraph, she raised no such new matters.  (See Op. Br. at 2; SAC ¶¶ 34-35)

Taft's reliance on her call with Hilton also fails because her allegation that she raised
matters beyond the Memo is contradicted by the SAC, the Memo, and her cover email to the
FRBNY; therefore, her allegation should not be credited. (Op. Br. at 16-17)  Indeed, Taft
alleges ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████ (Haviv Decl. [Dkt. No. 64], Ex B)  So, the Memo
is the contemporaneous memorialization of the conversation, ████████████.  The FRBNY's
Letter Response also contradicts Taft's claim to have made a different whistleblower's report

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████.[4]  (Op. Br. at 17)  Taft offers no

response to those facts, other than to state incorrectly that "ABC distorts Rostoker's letter in an

improper attempt to manufacture a contradiction between the Memo and Taft's telephone call

with Hilton." (Pl. Br. at 20)  ABC in fact points out that the call must have been *consistent* with

the Memo. (Op. Br. at 16-18)

### C.  Taft Has Not Pleaded a Report of Any Possible Violation Of Law

The Court found that the Memo does not report a possible violation of law.  Decision at

\*9.  Taft tries to avoid the Memo by claiming she raised different matters during a conversation

with the FRBNY (Pl. Br. at 6-7), but she cannot avoid the written record because, as addressed

directly above, ██████████████████████████████████  Moreover, much of what Taft

claims to have raised in the call with Hilton falls squarely into what the Court described as

"merely expressing a grievance or noting a suboptimal practice," not a report of a possible

violation of law. (Op. Br. at 18-19)  The SAC does not even allege that Taft claimed that ABC

was violating the Travel Rule during the call with Hilton.[5]  (Op. Br. at 19; see also SAC ¶ 35)  ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████.  The Letter Response further demonstrates there was no possible violation of law ████████

████████████████████████████████████████████████████████████

---

[4] Taft's argument that she had created "an informal memo" and the FRBNY responded with "a formal letter" is puzzling. (Pl. Br. at 8)  Neither document is more formal or informal than the other.

[5] Taft responds that ABC "distorts the SAC to make the absurd assertion" that Taft's call "failed to mention the Travel Rule" because she "obviously" referenced her concerns about the Rule to Hilton, and so ABC's claim that this fact is not properly pleaded is "simply ridiculous." (Pl. Br. at 15-16; see also SAC ¶ 35)  But a simple review of SAC ¶ 35, the paragraph cited by Taft, confirms that she made no such allegation.  (Cf. Haviv Decl. [Dkt. No. 64], Ex. E at Tr. 23:3-6 (Court: "How onerous would it have been to cite the travel rule if you actually had a violation of law in mind?  Unpack for me the onerousness to you of citing it.")  As addressed below, irrespective of Taft's failure to identify the Travel Rule, she did not identify any possible violation of the Travel Rule.

███████████████████████████████████████████.[6]   (Op. Br. at 17; Letter Response)   Taft's

unsupported statements that the Letter Response ████████████████████████████████████

████████████████████████████████████████████████████████   are just

wrong, as a review of the Letter Response shows.   (See Pl. Br. at 2, 11, 18)

Taft cites Balko's statement that "the events that followed [plaintiff's] disclosures"

demonstrated that plaintiff reported a possible violation of law.   Balko v. Ukrainian Nat'l Fed.

Credit Union, No. 13-Civ-1333 (LAK) (AJP), 2014 U.S. Dist. LEXIS 42427, at *82-85

(S.D.N.Y. Mar. 28, 2014).   The events that followed the disclosures in Balko were, among other

things, "a ten-page list of Examiner's Findings detailing 'violations of law or regulation'" and a

"Letter of Understanding mandating implementation of a new governance model."   Id. at *82-83.

Thus, Balko shows how regulators respond to actual whistleblowing, unlike what happened here.

### 1.   Taft Now Concedes That She Did Not Report A Possible Violation Of Law By ABC As An Intermediary Bank

The SAC, Taft's prior briefing and Taft's prior oral argument all alleged a possible

violation of law by ABC as an intermediary bank, focusing on the fact that, as an intermediary

bank, ABC did not receive information on ultimate customers.   (SAC ¶¶ 17, 27; Plaintiff's

Opposition Brief [Dkt. No. 39] at 4; Haviv Decl. [Dkt. No. 64], Ex. E at Tr. 23:18-23, 24:11-12)

Thus, in its Decision, this Court asked the parties to address "whether an intermediary bank that

does not receive such information has any affirmative obligation to obtain it."   Decision at *9

n.13.   Having focused on the Court's question, Taft now concedes that when ABC acts as an

intermediary, the Travel Rule does not require it to gather any information beyond what it

receives.   (See Pl. Br. at 20-21)   So, Taft concedes she did not report a possible violation of law.

---

[6] ████████████████████████████████████████████████████████████████
████████████████████████████████████

### 2.      Taft's New Theory That ABC Was Not an
<u>Intermediary Bank Does Not Save the Claim</u>

Faced with a defect in her claim, Taft creates a new theory for a possible violation of law:

that ABC was not an intermediary, but rather an originating, bank.[7]  (Pl. Br. at 20-22)  Taft's

new theory is irrelevant because (i) she has not pleaded the theory in the SAC, and (ii) she never

reported any possible violation of law based on ABC's position as a supposed originating bank.

To the contrary, ████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████  In fact, ABC's request for guidance arose because, as an

intermediary bank, ABC did not receive information on the ultimate sender and beneficiary; if

ABC had a relationship with these customers, it would have had access to the customer

information that the Memo described as unavailable.  Decision at *9 ("The memo to the FRBNY

notes that, as to certain transactions, only the originating and receiving banks were receiving that

sort of 'detailed transaction information,' but that ABC, the intermediary bank, was not.");

███████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████; SAC ¶ 26 (noting that Compliance did not see "the

name and address of the transmittor and recipient"); <u>see also</u> SAC ¶¶ 17, 20.

Plaintiff's only citation for her new theory is the Memo's statement that █████████████

███████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████  (Pl. Br. at 21)  But ABC only received ███████

████████████████████  because it was an intermediary.  Had ABC been the originating bank, it

---

[7] Taft claims that ABC employed "deceptive tactics" by citing the Travel Rule provision governing intermediary banks (Pl. Br. at 22), though ABC had no notice that Plaintiff would completely change theories in opposing this Motion, and though this Court specifically asked about the regulations governing intermediary banks.

would have been *transmitting* payment messages, not *receiving* them.   The FRBNY's Letter Response also confirms this, ███████████████████████████████████████ ██████████████████████████████████████████ (Letter Response at 2)

Moreover, the Memo's reference to ███████████████████████████████ ███████████████████████ by definition makes ABC an intermediary bank.   Applicable FinCEN regulations define "intermediary bank" as "[a] receiving bank other than the originator's bank or the beneficiary's bank."   31 C.F.R. § 1010.100(z); <u>accord</u> U.C.C. § 4A-105(4) (same); N.Y. U.C.C. § 4-A-104(2) (same).   An originator's bank is the bank that receives the originator's instruction to pay funds to the beneficiary (or the originator itself, if the transaction originates with a bank).   31 C.F.R. § 1010.100(jj) (2015).   ABC was not originating these transactions and it was not dealing directly with the transmittor or the beneficiary, so it was an intermediary, as stated in the Memo.   See <u>Clipper Wonsild Tankers Holdings A/S</u> v. <u>Biodiesel Ventures</u>, No. 07-cv-8704 (DC), 2009 U.S. Dist. LEXIS 119479, at *2 (S.D.N.Y. Dec. 16, 2009) (rejecting plaintiffs' argument that it was "unclear whether the bank involved in the EFTs [Electronic Funds Transfers] at issue was an 'intermediary' bank" because "[n]one of the EFTs at issue originated in New York, and none were destined for New York. . . . Because these EFTs passed through J.P. Morgan Chase's New York branch, J.P. Morgan Chase must have been acting as an intermediary on behalf of other banks"); <u>see also</u> Memo at 1.   Taft does not argue that transactions originated by ABC's home office in China should have been treated as having been originated by the New York branch, which would be equally flawed.   U.C.C. § 4-105(a)(2) ("A branch or separate office of a bank is a separate bank for purposes of this Article."); N.Y. U.C.C. § 4-A-105(1)(b) (same); <u>cf.</u> <u>Motorola Credit Corp.</u> v. <u>Uzan</u>, 978 F. Supp. 2d 205, 210 (S.D.N.Y. 2013) (each branch of a bank is treated as "a separate entity." (citations omitted)).   Accordingly,

Taft fails to plead a report of a possible violation of law by ABC as an originating bank.

**D.    The FRBNY Is Not A "Federal Supervisory Agency"**

The FRBNY is not a "Federal supervisory agency" within the meaning of Section 5328(a) of the BSA and, indeed, is not a federal agency at all.  (Op. Br. at 20-22)  It is not, as Plaintiff claims, comprised of just seven individuals appointed by the President (Pl. Br. at 22)—it is a major federal institution with a D.C. address, telephone numbers, and staff members, and there is no basis for Plaintiff to claim that she could not have reported there.  (See id. at 23)  Indeed, Plaintiff has written multiple letters and emails to the Board seeking documents since this case began, without any apparent difficulty.  Taft also claims the FRBNY is a "Federal supervisory agency" because the Board has delegated the actual process of conducting examinations to the Federal Reserve Banks (Pl. Br. at 22-23), but the Board still retains ultimate responsibility for supervising and regulating banks.  See 12 U.S.C. § 248(k) ("The Board . . . may not delegate to a Federal reserve bank its functions for the establishment of policies for the supervision and regulation of . . . financial firms supervised by the Board . . . .").  Nor has the Board delegated interpretation of the BSA and AML requirements to the Federal Reserve Banks. See 12 C.F.R. § 265.11 (listing "Functions delegated to Federal Reserve Banks").

The only case Taft cites in support of her argument, Balko, did not consider whether Federal Reserve Banks are "Federal supervisory agencies."  Balko involved a report to a field examiner of NCUA, a federal agency (id. at *50-51), and NCUA field examiners are employees of, and report directly to, the NCUA Board.  See 12 U.S.C. §§ 1766(d), 1784(a).  The Federal Reserve Banks are separate from the Board.  (Op. Br. at 21-22)

## CONCLUSION

For the foregoing reasons and those stated in the Opening Brief, Claim II of the Amended Complaint should be dismissed with prejudice.

DATED:  March 9, 2016

WHITE & CASE LLP

*/s/ Glenn M. Kurtz*
Glenn M. Kurtz (GK-6272)
Tal Marnin (TM-9675)
Kimberly A. Haviv (KH-6198)
1155 Avenue of the Americas
New York, NY 10036
Telephone:  212-819-8200
Facsimile:  212-354-8113
gkurtz@whitecase.com
tmarnin@whitecase.com
khaviv@whitecase.com

*Attorneys for Defendant*
*Agricultural Bank of China Limited*